1
2
3
4
5
6
Arash Samadani
(SB# 207988)
AS@SamadaniLaw.com
Samadani Law, APC
2070 N. Tustin Ave.
Santa Ana, CA  92705-7828
Telephone: 714.285.1144
Facsimile:|  714.285.1146

7
8
Attorney for Plaintiff
BALLISTIC TOOLS, INC.

9 **UNITED STATES DISTRICT COURT**

10 **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  BALLISTIC TOOLS, INC. | ) Case No: |
| 13 | ) |
| 14         Plaintiff, | ) **COMPLAINT FOR** |
|   vs. | ) **DECLARATORY JUDGMENT** |
| 15 | ) |
| 16  JOHN LANG SLUDER, | ) **DEMAND FOR JURY TRIAL** |
| 17 | ) |
|        Defendant. | )   <u>'16CV2744 MMANLS</u> |
| 18 | ) |
| | ) |

19      Plaintiff, BALLISTIC TOOLS, INC ("BALLISTIC" or "PLAINTIFF"), for its

20 Complaint against Defendant, JOHN LANG SLUDER ("SLUDER" or

21 "DEFENDANT"),  hereby demands a jury trial and alleges as follows:

22

23 **NATURE OF THE ACTION**

24     1.     This is an action for declaratory judgment of non-infringement,

25 invalidity, and  unenforceability of United States Patent No. 9,297,628 ("the '628

26 Patent") (Exhibit A) pursuant  to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-

27 02, and the patent laws of the United  States, 35 U.S.C. § 100 et seq., and for other

28 relief the Court deems just and proper.

**PARTIES**

2.      Plaintiff BALLISTIC is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business at 2486 Penicks Mills Road, Bedford, VA 24543.

3.      On information and belief, Defendant SLUDER is an individual residing at 11217 Adriatic Place, San Diego, CA 92126.

4.      As alleged herein, SLUDER has engaged in various acts in and directed to California.

**JURISDICTION AND VENUE**

5.      This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202, and the patent laws of the United States, 35 U.S.C. § 1, et seq.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

7.      SLUDER purports to be the owner of all rights, title, and interest in and to the '628 Patent. SLUDER has made statements alleging that BALLISTIC infringes the '628 Patent.

8.      Furthermore, SLUDER has demonstrated his ability and willingness to file suit through the threats of legal actions against BALLISTIC in letters sent to BALLISTIC.

9.      BALLISTIC has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '628 Patent, either literally or under the doctrine of equivalents, nor is BALLISTIC aware of any infringement of the '628 Patent.

10.     A substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

2

11.     This Court has personal jurisdiction over SLUDER because SLUDER is a resident of California and resides within the geographic region of the Court and it is believed that SLUDER may have conducted business in and directed to California, including pertaining to the '628 Patent, and has engaged in various acts in and directed to California.

## THE PATENT IN SUIT

12.     The '628 Patent is entitled "AMMUNITION PRIMER POCKET GAUGE TOOL" and bears an issuance date of March 29, 2016. A copy of the '628 Patent is attached hereto as Exhibit A.

## BACKGROUND OF PARTIES

13.     BALLISTIC is a corporation based in the United States that designs and manufactures tools in the firearms ammunition reloading industry.

14.     As a result of its significant investment in research and development, BALLISTIC has developed innovative tools.

15.     For example, BALLISTIC developed its Swage Gage Primer Pocket Gage ("the Swage Gage") for use in inspecting the reusability of the brass casings of firearm ammunitions.

16.     On June 22, 2016 SLUDER sent a letter to BALLISTIC (Exhibit B) alleging that the BALLISTIC product "identified as the Swage Gage Primer Pocket Gauge, may potentially infringe the patent," which had recently issued. (See Exhibit B).

17.     The '628 Patent was issued on March 29, 2016 – the underlying application has an earliest effective filing date of October 21, 2013. (See Exhibit A).

18.     The letter also threatened litigation, if Ballistic did not comply with its demands (See Exhibit B).

19.     On August 1, 2016 BALLISTIC's attorney sent an email attaching BALLISTIC's response to the SLUDER June 22, 2016 letter.  (See  Exhibit C)

20.     The BALLISTIC letter of August 1, 2016 included an analysis and highlighted that the BALLISTIC Swage Gage Primer Pocket Gage (the "accused product") was disclosed in an Internet publication dated August 9, 2013 -- several months before the October 21, 2013 priority date of the '628 Patent.  (See Exhibit C).

21.     The August 9, 2013 publication and disclosure of the accused product constitutes prior art and renders the '628 invalid.

22.     Neither SLUDER nor  SLUDER's attorneys responded in any substantive way to the contents of the August 1, 2016 - leaving open the threat of litigation and continued harassment.


# COUNT I

## DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,297,628

23.     BALLISTIC repeats and realleges the allegations in paragraphs 1-22 as though  fully set forth here.

24.     BALLISTIC has not infringed and does not infringe, directly or indirectly, any  valid an enforceable claim of the '628 Patent.

25.     As a result of the acts described in the foregoing paragraphs, there exists a  substantial controversy of sufficient immediacy and reality to warrant the issuance of a  declaratory judgment.

26.     A judicial declaration is necessary and appropriate as without such declaration BALLISTIC and the public will be subject to further baseless claims, annoyance and litigation.


# COUNT II

## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 9,927,628

27.     BALLISTIC repeats and realleges the allegations in paragraphs 1-26

4

as though fully set forth here.

28. The '628 Patent is invalid for failure to meet the conditions of patentability and/or otherwise to comply with one or more of 35 U.S.C. §§ 100 et seq., 101, 102, 103, 112 and 132.

29. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

30. A judicial declaration is necessary and appropriate as without such declaration BALLISTIC and the public will be subject to further baseless claims, annoyance and litigation.

# COUNT III
## DECLARATION OF UNENFORCEABILITY DUE TO UNCLEAN HANDS

31. BALLISTIC repeats and realleges the allegations in paragraphs 1-30 as though fully set forth here.

32. SLUDER has engaged in patent misuse and conduct comprising unclean hands rendering the '628 Patent unenforceable in this action.

33. SLUDER has engaged in a pattern and practice of improper activity to acquire and assert his patent in bad faith, including by making claims of patent infringement when he knew or should have known that the '628 Patent is either not actually infringed or is invalid.

34. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

35. A judicial declaration is necessary and appropriate so that BALLISTIC may ascertain its rights regarding the '628 Patent. as without such declaration BALLISTIC and the public will be subject to further baseless claims, annoyance and litigation.

## PRAYER FOR RELIEF

WHEREFORE, BALLISTIC respectfully requests that judgment be entered in its favor and pray that the Court grant the following relief:

A.       An order, judgment and decree be granted declaring that SLUDER is without right or authority to threaten or to maintain suit against BALLISTIC for the alleged infringement, either direct or indirect, of the '628 Patent.

B.       An order, judgment and decree be granted declaring that the claims of the '628 Patent are invalid and unenforceable;

C.       An order, judgment and decree be granted declaring that BALLISTIC is a prevailing party and that this is an exceptional case, awarding BALLISTIC its costs, expenses, disbursements, and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

D.       Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

BALLISTIC hereby respectfully demands a trial by jury on all issues and claims so triable.


Dated: November 4, 2016          SAMADANI LAW, APC


     S/ Arash Samadani
Arash Samadani

Attorney for Plaintiff
Email: AS@SamadaniLaw.com

## <u>EXHIBITS</u>

EXHIBIT "A":     United States Patent No. US 9,297,628 B2      Page 1

EXHIBIT "B":     Notice of Possible Infringement                      Page 10

EXHIBIT "C":     Response to Notice                                        Page 11



US009297628B2

(12) **United States Patent**
Sluder, III

(10) **Patent No.:** **US 9,297,628 B2**
(45) **Date of Patent:** **Mar. 29, 2016**

(54) **AMMUNITION PRIMER POCKET GAUGE TOOL**

(71) Applicant: **John Lang Sluder, III**, San Diego, CA (US)

(72) Inventor: **John Lang Sluder, III**, San Diego, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 80 days.

(21) Appl. No.: **14/502,503**

(22) Filed: **Sep. 30, 2014**

(65) **Prior Publication Data**

US 2015/0107126 A1    Apr. 23, 2015

**Related U.S. Application Data**

(60) Provisional application No. 61/893,477, filed on Oct. 21, 2013.

(51) **Int. Cl.**
*G01B 3/34* (2006.01)
*G01B 3/28* (2006.01)
*G01B 3/26* (2006.01)

(52) **U.S. Cl.**
CPC ... *G01B 3/28* (2013.01); *G01B 3/26* (2013.01)

(58) **Field of Classification Search**
CPC ............. G01B 3/26; G01B 3/28; G01B 3/34; G01B 3/50; G01B 5/08; G01B 5/18
USPC ............. 33/506, 542, 543, 550, 555.1, 555.2, 33/836
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,769,712 A | * | 11/1973 | Hong | G01B 5/08 |
| | | | | 33/813 |
| 4,077,319 A | | 3/1978 | Edmisten | |
| 4,090,305 A | * | 5/1978 | Cassidy | F41G 1/54 |
| | | | | 33/391 |
| 4,092,924 A | | 6/1978 | Edmisten | |
| 4,222,305 A | | 9/1980 | Lee | |
| 4,608,762 A | | 9/1986 | Varner | |
| 4,773,164 A | * | 9/1988 | Taylor | F41G 1/54 |
| | | | | 33/286 |
| 4,918,825 A | * | 4/1990 | Lesh | G01B 5/14 |
| | | | | 33/506 |
| 5,025,706 A | | 6/1991 | Markle | |
| 5,253,427 A | * | 10/1993 | Bartlett | G01B 3/30 |
| | | | | 33/501.08 |
| 5,301,436 A | * | 4/1994 | Johnston | F42B 35/02 |
| | | | | 33/506 |
| 5,365,669 A | * | 11/1994 | Rustick | G01B 5/0023 |
| | | | | 33/DIG. 21 |
| 5,396,708 A | * | 3/1995 | Whitley | F41G 3/323 |
| | | | | 279/2.02 |
| 5,471,757 A | * | 12/1995 | McDonald | G01B 3/30 |
| | | | | 33/199 R |
| 6,151,788 A | * | 11/2000 | Cox | G01B 11/27 |
| | | | | 33/286 |

(Continued)

*Primary Examiner* — G. Bradley Bennett
(74) *Attorney, Agent, or Firm* — Daniel Baudwin; Global Intellectual Property Agency, LLC

(57) **ABSTRACT**

A primer pocket gauge tool for handloading ammunition is provided, in which the size of the pocket can be verified prior to installation of a specific primer thereinto. The device comprises an elongated member having a first end and a second end, the first end adapted to verify that the pocket meets the minimum dimensions for a specific primer, and the second end adapted to verify the pocket is below the maximum diameter for the same primer. The first end has a diameter and a depth marker to measure the diameter of the primer pocket and its depth, while the second end has a diameter equal to the maximum allowable primer pocket diameter for the given primer. The user verifies the pocket tolerances for a specific primer prior to installation. Also contemplated are individual maximum and minimum gauge members, and incorporation into a swage tool.

**15 Claims, 3 Drawing Sheets**



**EXHIBIT "A"**
**Page 1**

(56) **References Cited**

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 6,338,201 | B1 * | 1/2002 | Och | G01B 7/14 |
| | | | | 33/501.11 |
| 2,387,645 | A1 | 12/2004 | Waarts | |
| 2002/0178598 | A1 * | 12/2002 | Berger | G01B 5/24 |
| | | | | 33/506 |
| 2004/0200084 | A1 * | 10/2004 | Wang | G01B 3/50 |
| | | | | 33/501.45 |
| 2006/0248739 | A1 * | 11/2006 | Cauley | F41A 31/00 |
| | | | | 33/506 |
| 2009/0320310 | A1 * | 12/2009 | Pelotte | G01B 3/28 |
| | | | | 33/836 |
| 2010/0005676 | A1 * | 1/2010 | Fujikawa | G01B 5/12 |
| | | | | 33/542 |
| 2013/0219728 | A1 * | 8/2013 | Hartman | G01B 3/205 |
| | | | | 33/506 |
| 2014/0196300 | A1 * | 7/2014 | Williamson, IV | G01B 3/28 |
| | | | | 33/701 |

* cited by examiner



**FIG. 1**



**FIG. 2**

EXHIBIT "A"
Page 3



**FIG. 3**



**FIG. 4**



**FIG. 5**

EXHIBIT "A"
Page 5

1

# AMMUNITION PRIMER POCKET GAUGE TOOL

## CROSS REFERENCE TO RELATED APPLICATION

This application claims the benefit of U.S. Provisional Application No. 61/893,477 filed on Oct. 21, 2013, entitled "Ammunition Primer Pocket Gauge." The above identified patent application is herein incorporated by reference in its entirety to provide continuity of disclosure.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to measuring tools and to handloading ammunition. More specifically, the present invention relates to a handheld gauge tool that allows a user handloading a firearm bullet to measure the tolerances of a primer pocket without the use of a caliper.

Handloading ammunition has several benefits for the outdoorsman and enthusiast. First, handloading greatly reduces the cost per bullet, once the necessary equipment has been purchased and its investment has been recouped. Secondly, handloading can be used to make more precisely loaded bullets with closer tolerances, which can improve accuracy of the bullet exiting the firearm. Thirdly, the spent brass after a round at the shooting range can be reused and recycled into new bullets, whereby waste is reduced and material usage is reduced. These benefits make handloading a popular activity for some, and particularly to those who enjoy shooting, hunting, and for those who are required to maintain their shooting skills for a profession.

Firearm bullet s generally comprise a bullet projectile, which is supported within a brass case filled with a propellant. The bullet is supported along one end of the case and a primer is positioned at the opposite end. The primer is struck and used to ignite the propellant, whereby the pressure created ejects the bullet from the barrel of the firearm and ejects the empty casing from the ejection port. This configuration is well known in the art of bullets and firearms, and serves as a reliable manner to fire a bullet projectile from the barrel of a firearm.

The present invention specifically pertains to positioning the primer within the primer pocket of the brass casing, and furthermore to swaging tools adapted to cold work the casing while handloading. More specifically, the present invention relates to ensuring proper dimensions are maintained in the primer pocket while handloading, whereby that the primer can be properly seated with the correct tolerances. Primers are typically inserted cautiously but with sufficient force so as to fully seat the primer into a primer pocket. If the pocket is smaller in diameter than the primer, the primer can potentially be crushed and explode during the loading process. If the pocket is shallower than the height of the primer, the primer will stick out of the pocket when positioned therein. This can result in a "slam" fire in which the round lights off as soon as it's chambered. This can also cause the firearm to explode. The potential therefore exists to injure or kill the user and surrounding bystanders if the handloading of the bullet is conducted properly and to correct tolerances.

The present invention comprises a measurement gauge that is sized such that the tool can quickly be deployed and used to determine the appropriate dimensions of a primer pocket without reading indicia. The tool comprises one or more elongated members, each member having a first and a second measuring end. The first end has a specific diameter and is

2

used to measure the minimum diameter of the primer pocket. The second end has a second diameter that is used to measure the maximum diameter of the primer pocket. Along the first end is a depth marker that is used to show whether the depth of the primer pocket is within tolerance when the first end is completely disposed within the primer pocket interior. Primer pockets have specific sizes and allowable tolerances for specific style firearms (i.e. specific primer sizes), therefore a gauge tool is contemplated for each style and size range. Overall, the tool provides a quick dimension measuring device for a user handloading bullets to ensure the proper primer pocket dimensions are within allowable tolerances for the given primer size.

### 2. Description of the Prior Art

Devices have been disclosed in the prior art that relate to ammunition primer pockets. These include devices that have been patented and published in patent application publications. These devices generally relate to primer loading devices and devices generally for gauging an article of ammunition. The following is a list of devices deemed most relevant to the present disclosure, which are herein described for the purposes of highlighting and differentiating the unique aspects of the present invention, and further highlighting the drawbacks existing in the prior art.

U.S. Pat. No. 5,025,706 to Markle discloses a controlled depth primer seating tool, which comprises a tool the supports a shell casing and controllably inserts a primer into the primer pocket thereof. A measurement assembly measures the depth of the tool probe seats the primer within the primer pocket and provides a slight pre-load compression of the anvil head. The Markle device, while a useful tool for inserting and seating a primer into the primer pocket while accommodating tolerances, is not adept at measuring the primer pocket and ensuring the pocket is sized adequately to receive the primer without causing damage or improper seating thereof.

Similar to Markle is U.S. Pat. No. 4,222,305 to Lee, which discloses a tool for inserting primers in to primer pockets using a spring biased lever mechanism. While being capable of loading primers into respective primer pockets, the Lee device fails to provide a means to measure the primer pocket for adequate clearance prior to inserting the primer thereinto. The purpose and the function of the Lee and Markle device diverge from that of the present invention, wherein the Lee and Markle devices are representative of insertion tools in the art and the present invention relates to a gauge tool prior to inserting a primer.

Gauge tools in the art include U.S. Pat. No. 2,387,645 to Cook, which discloses a gauging machine having an elongated table, a bullet support member, a reciprocating gauging rod, and a reciprocating head member. The gauging rod is pressed into the bullet and through the table, wherein an abutment member maintains alignment between the gauging rod and the bullet. The Cook device is one that is suitable for use on a workbench, wherein a large assembly is supported and a reciprocating mechanism is deployed as the tool holds the bullet. The present invention contemplates a simpler gauging mechanism, wherein one or more gauge rods are used to measure the tolerances of a primer pocket and quickly determine whether the pocket is too wide, too narrow, too shallow or too deep.

Finally, U.S. Pat. No. 4,608,762 to Varner discloses bullet seating gauge that ensures the bullet is properly seated within the bullet casing such that its maximum girth area engages the rifling of the firearm barrel. An elongated, threaded shaft extends through the base of a bullet casing to move the bullet along the opposing end. The threaded shaft extends through the primer pocket bore and through the interior of the casing.

EXHIBIT "A"

Page 6

3
4

Conversely, the present invention relates to a measurement gage after the primer pocket has been positioned within the primer pocket bore. The gauge of the present invention measures the dimensions of the primer pocket itself prior to insertion of the primer thereinto.

The present invention comprises one or more primer pocket gauge tools that are elongated gauge rods having a first end and a second end, wherein the first end measures the minimum diameter of the primer pocket and the second end measures the maximum diameter of the primer pocket. The primer pockets are designed to accommodate a specifically sized primer therein. Proper fitment of the primer therein is of paramount importance, therefore proper dimensions of the pocket must be ensured prior to loading the primer into the pocket. Along with maximum and minimum diameter verification, the gauge tool of the present invention also measures depth of the primer pocket to ensure the depth is within a given allowable tolerance for the specific primer being loaded. The present invention offers a quick reference tool that does not require measurement or an elaborate measuring apparatus that would otherwise require an investment that must be recouped by the handloading user.

Overall, the present invention substantially diverges in design elements from the prior art, and consequently it is clear that there is a need in the art for an improvement to existing primer pocket gauge tool devices. In this regard the instant invention substantially fulfills these needs.

SUMMARY OF THE INVENTION

In view of the foregoing disadvantages inherent in the known types of gauge tools now present in the prior art, the present invention provides a new gauge tool device that can be utilized for providing convenience for the user when handloading firearm bullets and checking the size of the primer pocket prior to loading a primer thereinto.

It is therefore an object of the present invention to provide a new and improved primer pocket gauge tool device that has all of the advantages of the prior art and none of the disadvantages.

It is another object of the present invention to provide a primer pocket gauge tool that is used to verify the dimensions of a primer pocket of a known size, and therefore ensure proper tolerances are provided for the primer to be inserted therein.

Another object of the present invention is to provide a primer pocket gauge tool that is a simple hand tool that can ensure the primer pocket diameter and depth are within specifications.

Yet another object of the present invention is to provide a primer pocket gauge tool that ensures the primer is not pressed into an inadequate sized primer pocket, either too large or too small, thereby preventing potential mishaps related to the ammunition as a result of improper primer seating or preload.

Another object of the present invention is to provide a primer pocket gauge tool that comprises an elongated rod, whereby both ends of the rod measure the diameter specifications and one end is used to verify depth specifications of a primer pocket.

Another object of the present invention is to provide a primer pocket gauge tool that may be incorporated into a handloading swage tool.

Another object of the present invention is to provide a primer pocket gauge tool may be readily fabricated from materials that permit relative economy and are commensurate with durability.

Other objects, features and advantages of the present invention will become apparent from the following detailed description taken in conjunction with the accompanying drawings.

BRIEF DESCRIPTIONS OF THE DRAWINGS

Although the characteristic features of this invention will be particularly pointed out in the claims, the invention itself and manner in which it may be made and used may be better understood after a review of the following description, taken in connection with the accompanying drawings wherein like numeral annotations are provided throughout.

FIG. 1 shows a side view of the primer pocket gauge tool of the present invention.

FIG. 2 shows a view of the primer pocket gauge tool being inserted into an open primer pocket to verify its dimensions.

FIG. 3 shows a cross section view of the primer pocket gauge tool inserted into a primer pocket.

FIG. 4 shows a view of several primer pocket gauge tools, each designed to verify a specific primer pocket size.

FIG. 5 shows an embodiment of the present invention in which a plurality of primer pocket gauge tools are disposed on a ring and only one end thereof is used as a gauge.

DETAILED DESCRIPTION OF THE INVENTION

Reference is made herein to the attached drawings. Like reference numerals are used throughout the drawings to depict like or similar elements of the primer pocket gauge tool of the present invention. For the purposes of presenting a brief and clear description of the present invention, the preferred embodiment will be discussed as used for verifying the dimensions of a primer pocket prior to handloading a primer thereinto. The figures are intended for representative purposes only and should not be considered to be limiting in any respect.

Referring now to FIG. 1, there is shown a side view of the primer pocket gauge tool 10 of the present invention, in which the minimum and maximum dimensions of a primer pocket can be measured using a single tool. The device comprises an elongated member 11 having a first end 12 and a second end 13. The first end 12 is adapted to verify that the primer pocket meets the minimum allowable dimensions and has a depth within the allowable range. The second end 13 is used to verify the primer pocket is not above its maximum allowable diameter. The first end 12 is therefore adapted to be inserted into a primer pocket of known size, wherein successful insertion illustrates the primer pocket diameter is sufficiently sized above the minimum allowable size. A depth gauge 19 is provided adjacent to the first end 12 in which the depth of the primer pocket is verified. Finally, the second end 13 is then positioned against the primer pocket to verify the second end 13 does not achieve successful insertion thereinto. The second end 13 is sized such that any primer pocket above its diameter is out of the allowable range for the specific primer to be inserted.

Proper dimensioning of the primer pocket is critical to successfully and safely seating a primer of known size into a pocket adapted to receive the primer. Improper sizing can create faulty ammunition, cause misfires or unwanted activation, and expose the handloading installer and firearm user to danger. Primers are designed for specific munition sizes, wherein the primer has a specific size and shape. The primer is received within a primer pocket that is sized to receive the specific primer with a given clearance. The primer pocket is generally a cylindrical opening within the base of the ammu-

EXHIBIT "A"
Page 7

US 9,297,628 B2

**5**

nition, wherein the cylindrical opening has a specific depth. The pocket provides a diameter and depth such that the primer is seated without being preloaded and such that the primer does not extend rearward from the base of the ammunition such that it is partially exposed. The size of the primer pocket depth and diameter must be within a given size range to accommodate a primer of known size, whereby larger or smaller sizes are out of range and thus not suitable for receiving the primer.

Referring now to FIGS. 1 and 2, the user verifies that the dimensions of the primer pocket 32 are within allowable ranges by inserting the ends of the device into the primer pocket 32. The user first verifies that the primer pocket 32 is not too wide for the given primer. The second end 13 thereof, noted by the "MAX" indicia 18, is placed against the primer pocket 32. If the second end 13 successfully inserts therein, the pocket 32 is above its allowable diameter and thus is not acceptable for receiving the primer. The diameter 14 of the second end 13 is sized such that it equals or is slightly greater than the maximum allowable diameter of the primer pocket 32, therefore the ability to insert thereinto illustrates a pocket 32 that is too large for the given primer.

If the user cannot insert the second end 13 into the pocket 32, the user next verifies whether the primer pocket 32 is greater than the minimum diameter and whether its depth is within an acceptable range. The diameter 15 of the first end 12 is sized such that it equals or is just greater than the minimum allowable diameter for the given primer pocket 32. Successful insertion of the first end 12 ensures that the primer pocket 32 does not have too small of a diameter to accommodate the given primer. The first end 12, similar to the second end 13, is denoted with "MIN" indicia 17 and further includes a depth gauge strip 19 adjacent thereto. The strip 19 is used to measure the allowable depth of the primer pocket 32 once the first end 12 has been inserted thereinto.

The strip 19 is used as a depth gauge, whereby the strip 19 extends around the circumference of the first end 12 and includes a width 16 that is equal to the allowable depth range of the primer pocket. The end of the strip 19 adjacent to the distal end 20 of the first end 12 is the minimum allowable primer pocket depth, while the outer end of the strip is the maximum allowable primer pocket depth. The measurement is taken after the distal end 20 is pressed against the interior wall of the primer pocket, whereby visualization of the pocket outer extent can be verified as falling within the strip extents or being too shallow or deep. In this way, the primer pocket 32 of the ammunition round 30 can be checked for the major dimensions prior to installation of the primer thereinto.

Referring now to FIG. 3, there is shown a cross sectional view of the primer pocket and the gauge tool of the present invention, illustrating the method in which the interior dimensions of the pocket 32 are verified. As illustrated, the first end 12 of the gauge (e.g. the "MIN" end) is inserted into the pocket 32 interior. The distal end 20 of the device is pressed against the interior wall 34 of the primer pocket 32. This procedure is generally conducted after the second end of the tool has been inserted, whereby the diameter of the pocket is verified as below the maximum allowable. The first end 12 verifies that the pocket diameter is not too small. Insertion of the tool thereinto verifies the pocket diameter is not too small and will accommodate a primer specific for the given bullet.

Once fully inserted and the minimum diameter is verified as within allowable tolerance, the depth gauge strip 19 is employed to verify the depth of the pocket 32 is within an allowable range. The strip 19 is parallel to the distal end 20 of the tool and extends around the perimeter thereof. The strip 19 is visible to the user and has an outer extent 23, an inner extent

**6**

22, and a width that is defined as a specific color identifiable from the body of the tool. To verify the depth of the pocket 32, the outer surface 33 of the bullet must fall within the outer 23 and inner 22 extents of the strip 19. If the end of the tool is visible between the pocket outer surface 33 and the strip 19, the pocket depth is too shallow. Conversely, if the strip outer extent 22 is positioned within the pocket interior, the depth is too great. In this way, the first end 12 of the device measures both minimum diameter and depth of the primer pocket 32.

The primer pocket size for a given bullet is based on the primer size, which is a known quantity. The allowable pocket size for a given primer is stipulated by the munitions industry through Sporting Arms and Ammunition Manufacturers' Institute, Inc. (SAAMI). SAAMI creates and publishes industry standards for safety, interchangeability, reliability and quality, and furthermore coordinates technical data for munitions. It is contemplated that the dimensions of the present invention will be set to the maximum and minimum allowable dimensions set forth by SAAMI for a type of firearm ammunition. Notably, the diameter of first and second end and the distance of the depth measuring strip and its width will correspond to SAAMI guidelines. The following table outlines the contemplated dimensions of the primer pocket to be measured by the gauge tool of the present invention, based on SAAMI standards. The gauge tool will be sized to measure the minimum and maximum of the primer pocket depth and diameter. The primer pocket sized is broken down by munition type.

TABLE I

| Primer Pocket Specifications (inches) | | | | |
|---|---|---|---|---|
| Primer Pocket | Min. Diameter | Max. Diameter | Min. Depth | Max. Depth |
| Small Rifle/Pistol | 0.1730 | 0.1745 | 0.1170 | 0.1230 |
| Large Pistol | 0.2085 | 0.2100 | 0.1170 | 0.1230 |
| Large Rifle | 0.2085 | 0.2100 | 0.1250 | 0.1320 |

Referring now to FIGS. 4 and 5, there are shown embodiments of the gauge tool of the present invention, wherein the tool measuring capabilities may be disposed on a single member for each ammunition type (FIG. 4), or the MIN/MAX measurement functions may be separated into two separate members (FIG. 5). In the former embodiment and as shown in FIG. 4, the tool comprises an elongated member with a first end 12 and second end 13, each end having a measuring capability and the first end 12 combining depth and diameter measurements. Different primer pocket sizes, based on munition sizes, are measured using separate members 11, each member being fully capable of measuring min/max diameter and depth.

For the latter embodiment and as shown in FIG. 5, the min/max measuring functions are spread into individual members, wherein a min gauge 50 and a max gauge 51 are deployed for a single primer pocket. The proximal, non-measuring ends thereof can be retained by a ring 53 securing through apertures 52 in each tool. Each primer pocket size has a pair of measuring tools 50, 51, wherein a plurality thereof can be retained on the ring 53 and secured to the user by way of a spring clip 54 if so desired.

In either embodiment, the device comprises an elongated rod with specific diameters on the measuring end (or ends), and a strip for verifying primer pocket depth. The tool is inserted into the primer pocket of a firearm, wherein if the device fits into the pocket, the primer pocket is of minimum diameter. If the device does not fit into the pocket, the proper

7

8

pocket is out of specification and the bullet casing should be discarded. The device is configured to verify the specifications of a primer pocket of ammunition for rifles and pistols, to verify a swage tool is properly set up by running a casing and checking the casing with the tool, and to prevent a primer from becoming jammed in the primer pocket or ill-fitted thereinto.

A user that handloads once-fired brass can use the present gauge tool to verify a swage tool is set up properly and to verify dimensions prior to primer insertion. In assisting a swage operation, users set up a swage tool and run a casing therethrough. The user checks the casing using the gauge tool such that he or she will then know the swage tool is set up and function accurately. After this, the user will then be able to seat a primer properly into the primer pocket. Failure to use the gauge tool or otherwise verify the pocket dimensions can cause a primer to be jammed into the primer pocket, potentially causing an explosion during the seating process. The present invention is submitted as a tool that quickly enables a user to verify the diameter and depth of the primer pocket. In this way, the present invention provides a useful assistant for the handloading user.

It is submitted that the instant invention has been shown and described in what is considered to be the most practical and preferred embodiments. It is recognized, however, that departures may be made within the scope of the invention and that obvious modifications will occur to a person skilled in the art. With respect to the above description then, it is to be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use, are deemed readily apparent and obvious to one skilled in the art, and all equivalent relationships to those illustrated in the drawings and described in the specification are intended to be encompassed by the present invention.

Therefore, the foregoing is considered as illustrative only of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention.

I claim:

**1.** A primer pocket gauge tool, comprising:

an elongated member having a first end, a second end, and a length;

said first end having a diameter and a distal end;

said second end having a diameter;

said first end adapted to verify a primer pocket minimum diameter;

said second end adapted to verify a primer pocket maximum diameter;

said diameter of said first end being equal to or slightly greater than a primer pocket minimum diameter;

said diameter of said second end being equal to or slightly greater than a primer pocket maximum diameter;

a depth gauge strip adjacent to said distal end of said first end;

said depth gauge strip having an outer extent, an inner extent, and a width;

said depth gauge strip adapted to verify a primer pocket depth is within an acceptable range;

said outer extent being offset from said distal end a distance equal to a primer pocket minimum depth;

said inner extent being offset from said distal end a distance equal to a primer pocket maximum depth.

**2.** The primer pocket gauge tool for claim **1**, wherein said depth gauge strip extending circumferentially about said elongated member and in parallel to said distal end.

**3.** The primer pocket gauge tool for claim **1**, wherein said depth gauge strip is a colored marking about said elongated member.

**4.** The primer pocket gauge tool for claim **1**, wherein said diameter of said first end, diameter of said second end, and said width and offset of said depth gauge strip are all representative of dimensions of a primer pocket for a specific style of ammunition.

**5.** The primer pocket gauge tool for claim **1**, wherein said first end further comprises a "MIN" measurement indicia.

**6.** The primer pocket gauge tool for claim **1**, wherein said second end further comprises a "MAX" measurement indicia.

**7.** A primer pocket gauge tool, comprising:

an elongated member having a first end, a second end, and a length;

said first end having a diameter and a distal end;

said first end adapted to verify a primer pocket minimum diameter;

said diameter of said first end being equal to or slightly greater than a primer pocket minimum diameter;

a depth gauge strip adjacent to said distal end of said first end;

said depth gauge strip having an outer extent, an inner extent, and a width;

said depth gauge strip adapted to verify a primer pocket depth is within an acceptable range;

said outer extent being offset from said distal end a distance equal to a primer pocket minimum depth;

said inner extent being offset from said distal end a distance equal to a primer pocket maximum depth.

**8.** The primer pocket gauge tool for claim **7**, wherein said second end further comprises an aperture adapted to receive a ring therethrough.

**9.** The primer pocket gauge tool for claim **7**, wherein said depth gauge strip extending circumferentially about said elongated member and in parallel to said distal end.

**10.** The primer pocket gauge tool for claim **7**, wherein said depth gauge strip is a colored marking about said elongated member.

**11.** The primer pocket gauge tool for claim **7**, wherein said diameter of said first end, diameter of said second end, and said width and offset of said depth gauge strip are all representative of dimensions of a primer pocket for a specific style of ammunition.

**12.** The primer pocket gauge tool for claim **7**, wherein said first end further comprises a "MIN" measurement indicia.

**13.** A primer pocket gauge tool, comprising:

an elongated member having a first end, a second end, and a length;

said first end having a diameter and a distal end;

said first end adapted to verify a primer pocket maximum diameter;

said diameter of said first end being equal to or slightly greater than a primer pocket maximum diameter.

**14.** The primer pocket gauge tool for claim **13**, wherein said first end further comprises a "MAX" measurement indicia.

**15.** The primer pocket gauge tool for claim **13**, wherein said second end further comprises an aperture adapted to receive a ring therethrough.

\* \* \* \* \*

Daniel Brian Boudwin †*◊
Michael Haggerson †*◊
Jordan Sworen †*◊
Daniel Enea †◊
Tyler Donato *
Alexander Boyer *
Aaron B. Colquitt ◊



**BOUDWIN & Associates, LLC**
Law Offices

† NJ  ‡ PA  ◊ USPTO  € Of Counsel

120 Center Square Road, Suite 202, Woolwich, NJ 08085
P (856) 975-6241; F (888) 266-1613

June 22, 2016

Ballistic Tools, Inc.
2486 Penicks Mill Road
Bedford, VA 24523-3435

Re:     Notice of Possible Infringement of U.S. Utility Patent

Dear Sir or Madam,

Please be advised that John Sluder is the owner of a United States Utility Patent Number 9,297,628 from the U.S. Patent & Trademark Office. It is our belief that your product, identified as the Swage Gage Primer Pocket Gauge, may potentially infringe the patent. I have advised Mr. Sluder of his rights, and he hopes to resolve this matter without taking legal action. However, Mr. Sluder has indicated his intent to proceed through formal legal channels if necessary to protect his rights. I would like to further discuss this matter with you in order to avoid legal proceedings, and I can be contacted by phone, email, or postal mail. If you do not respond within twenty-one days from the mailing date of this letter, we will pursue legal recourse. Thank you in advance for your anticipated cooperation in this matter.

Sincerely,

Daniel Boudwin, Esq.

Cc: John Sluder

# DOUGLAS E. WARREN

### ATTORNEY AT LAW

THE LAW OFFICE OF DOUGLAS E. WARREN, LLC
POST OFFICE BOX 6727
CHESTERFIELD, MISSOURI 63006

REGISTERED PATENT ATTORNEY
PHONE:     636-519-5257
email: dewarren@charter.net

August 1, 2016

***SENT BY EMAIL TO Daniel.Boudwin@GlobalIPA.com***
***AND BY US POSTAL SERVICE FIRST CLASS MAIL***

Mr. Daniel B. Boudwin, Esq.
Boudwin & Associates, LLC Law Offices
120 Center Square Road, Suite 202
Woolwich, New Jersey 08085

    Subject:        Your Letter of June 22, 2016 to Ballistic Tools, Inc.

Dear Mr. Boudwin:

    My firm represents Ballistic Tools, Inc. ("Ballistic Tools") in its intellectual property matters. Mr. Jason Giglio, President of Ballistic Tools, has forwarded me your above-noted June 22, 2016 letter and our response is included herein.

    First, thank you for giving us extra time to make a preliminary review of the facts of this case and provide this reply. If necessary, we will try to return the consideration.

    As a threshold statement, please be advised that Ballistic Tools has no intention of violating anyone's valid intellectual property rights. Ballistic Tools respects the intellectual property rights of others just as Ballistic Tools expects others to respect Ballistic Tools' intellectual property rights. We take the allegations of your June 22, 2016 letter very seriously. This letter contains our initial response to your allegations that Ballistic Tools is infringing a U.S. Patent.

    In your letter, you allege that Ballistic Tools' Swage Gage Primer Pocket Gage ("the Swage Gage") infringes U.S. Patent Number 9,297,628 ("the '628 Patent"), a patent you state in your letter is apparently owned by Mr. John Sluder. Additionally, your letter includes warnings that you and Mr. Sluder are prepared to enter into legal action to enforce the patent rights of the '628 Patent against Ballistic Tools. We also note that this is the second time Mr. Sluder has made these allegations because those same allegations were also included in a February 3, 2014 letter to Ballistic Tools.

We have conducted our preliminary research and disagree with your allegations.

The '628 Patent was issued on March 29, 2016 based on a nonprovisional application that was filed on September 30, 2014 which was itself based on a provisional application for patent filed on October 21, 2013. During the prosecution of the '628 Patent application, Mr. Sluder filed an Information Disclosure Statement (Attachment A) when he filed his nonprovisional application on September 14, 2014. The examiner also conducted a search for prior art references and those references are included in a Notice of References Cited by the examiner (Attachment B) in a communication from the patent examiner on February 18, 2016. It is noted that the examiner issued a Notice of Allowance (Attachment C) on February 18, 2016 without issuing any Non-Final or Final rejection of any of the claims of the '628 application as filed on September 30, 2014.

That Notice of Allowance included a Reasons for Allowance section to explain why the examiner allowed all the claims of the '628 application. Those Reasons included a statement that the examiner allowed the claims because the combinations within the claims were "neither disclosed nor suggested by the art of record." It is significant to note that neither the Information Disclosure Statement or the examiner's Notice of References Cited includes any reference to any prior art related to either Ballistic Tools, Inc. or to Mr. Jason Giglio. It is also important to note that at the time of the filing of the earliest filing date for the '628 Patent application the America Invents Act ("AIA") was fully in effect and thus the '628 Patent application was filed under the "First-To-File" rule rather than the now obsolete "First-To-Invent" statutory rule.

In view of the above, it is our finding that Ballistic Tools does not infringe the '628 Patent because that patent is invalid and unenforceable. More specifically, the file wrapper for the examination of the '628 Patent application does not disclose that the patent examiner did not find, and was notified about, critical prior art that would have likely resulted in a rejection of all the claims of the '628 patent as being anticipated by the uncited prior art reference.

More specifically, our preliminary research reveals that the device you allege infringes the claims of the '628 Patent was disclosed in at least one printed publication that is dated at least as early as August 9, 2013. As one example, a copy of an Internet web page that shows information about the Ballistic Tools "Swage Gage" (Attachment D) includes an image of the Swage Gage with a link to the Ballistic Tools web page and a description of its intended purpose and use. The August 9, 2013 date of that publication is more than two months before the earliest filing date of October 21, 2013 for the '628 Patent application. It is important to again note that none of the printed publications related to Ballistic Tools or the Swage Gage were known by the patent examiner during the examination of the '628 Patent application.

As a patent attorney, I am sure you are aware of a well-known quotation by Judge Learned Hand that was cited in a 2005 opinion of the Court of Appeals for the Federal Circuit:

> "A century-old axiom of patent law holds that a product "which would literally infringe if later in time anticipates if earlier." <u>Schering Corp. v. Geneva Pharms., Inc.</u>, 339 F.3d 1373, 1379 (Fed.Cir.2003) (<u>quoting</u> <u>Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.</u>, 246 F.3d 1368, 1378 (Fed.Cir.2001)); <u>accord</u> <u>Peters v. Active Mfg. Co.</u>, 129 U.S. 530, 537, 9 S.Ct. 389, 32 L.Ed. 738 (1889) ("That which infringes, if later, would anticipate, if earlier.")
> <u>Upsher-Smith Laboratories, Inc. v. Pamlab, L.L.C.</u>,
> No. 04-1405 (Fed. Cir. June 17, 2005)."

Under this rule, if there is a present allegation of infringement of a patent claim by a device, that same device would be prior art against the asserted patent if the allegedly infringing device existed prior to the earliest filing date of the asserted patent.

In your letter you allege that the Swage Gage presently infringes the claims of the '628 patent. Our research shows, however, that the Swage Gage was disclosed in a printed publication dated before the earliest effective filing date of the '628 Patent. Because "that which infringes, if later, would anticipate, if earlier," the Swage Gage publication and device are prior art to the '628 Patent and anticipate the invention claimed in the '628 Patent.

This is a serious issue related to the validity of the '628 Patent. In fact, we believe that any legal challenge to the validity of the '628 Patent - either in a federal lawsuit or in an action before the United States Patent and Trademark Office - could result in a finding that the claims of the '628 Patent would very likely be invalidated as being anticipated by the Ballistic Tools prior art. We certainly understand the need for Mr. Sluder to protect his patent rights and to prevent others from infringing those rights. In this particular case, however, Ballistic Tools believes that the '628 patent is probably invalid and respectfully suggests that Mr. Sluder may need to expend his energy in protecting his patent rather than asserting patent infringement claims against Ballistic Tools.

Be sure you understand that because Ballistic Tools takes any claim of patent infringement very seriously, and that Ballistic Tools will take whatever steps necessary to vigorously defend itself against any unjustified claims of infringement of the '628 Patent by Mr. Sluder. Any Ballistic Tools defense would almost certainly include a claim that the `628 Patent is invalid.

Additionally, in light of the information contained within this letter, Ballistic Tools will also deem any patent infringement lawsuit filed by Mr. Sluder against Ballistic Tools as a probable case of vexatious litigation and as an exceptional case under the law. As such, we would request the court to have Mr. Sluder pay all of our costs and attorney fees when we prevail in any such lawsuit you may file. We strongly suggest that you reconsider your decision to allege Ballistic Tools infringes the '628 Patent or pursue any litigation against Ballistic Tools in this matter.

If you should have any questions about anything in this letter, please feel free to contact the undersigned by not later than August 22, 2014.

Very truly yours,

Douglas E. Warren
Attorney at Law

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | John Lang Sluder III |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | JS319875 |

| | | | | | | U.S.PATENTS | Remove |
|---|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 5025706 | | 1991-06-25 | Kenneth E. Markle | |
| | 2 | 2387645 | | 2004-12-07 | Robert Waarts | |
| | 3 | 4608762 | | 1986-09-02 | Robert F. Varner | |
| | 4 | 4092924 | | 1978-06-06 | John H. Edmisten | |
| | 5 | 4077319 | | 1978-03-07 | John H. Edmisten | |
| | 6 | 4222305 | | 1980-09-16 | Richard J. Lee | |

| If you wish to add additional U.S. Patent citation information please click the Add button. | Add |
|---|---|

| | | | | U.S.PATENT APPLICATION PUBLICATIONS | | Remove |
|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|

**EXHIBIT "C"**
**Page 15**

<table>
<tr><td rowspan="2" colspan="2">INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT<br>( Not for submission under 37 CFR 1.99)</td><td>Application Number</td><td></td></tr>
<tr><td>Filing Date</td><td></td></tr>
</table>

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | John Lang Sluder III |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | JS319875 |

|  | 1 |  |  |  |  |  |
|---|---|---|---|---|---|---|

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

### FOREIGN PATENT DOCUMENTS                    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
|  | 1 |  |  |  |  |  |  | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

### NON-PATENT LITERATURE DOCUMENTS                    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
|  | 1 |  | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button    Add

### EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | |
| | Filing Date | |
| | First Named Inventor | John Lang Sluder III |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | JS319875 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Daniel Boudwin/ | Date (YYYY-MM-DD) | 2014-09-24 |
|---|---|---|---|
| Name/Print | Daniel Boudwin | Registration Number | 59471 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

### Notice of References Cited

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14/502,503 | SLUDER, JOHN LANG |
| | Examiner | Art Unit | Page 1 of 2 |
| | G. Bradley Bennett | 2855 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-3,769,712 A | 11-1973 | Hong; Kyung J. | G01B5/08 | 33/813 |
| * | B | US-4,090,305 A | 05-1978 | Cassidy; James Lawrence | F41G1/54 | 33/391 |
| * | C | US-4,773,164 A | 09-1988 | Taylor; Douglas P. | F41G1/54 | 33/286 |
| * | D | US-4,918,825 A | 04-1990 | Lesh; Stephen S. | G01B5/14 | 33/506 |
| * | E | US-5,253,427 A | 10-1993 | Bartlett; Elizabeth | G01B3/30 | 33/501.08 |
| * | F | US-5,301,436 A | 04-1994 | Johnston; Roger B. | F42B35/02 | 33/506 |
| * | G | US-5,365,669 A | 11-1994 | Rustick; Joseph M. | G01B5/0023 | 33/DIG.21 |
| * | H | US-5,396,708 A | 03-1995 | Whitley; Mark J. | F41G3/323 | 279/2.02 |
| * | I | US-5,471,757 A | 12-1995 | McDonald; Randolph C. | G01B3/30 | 33/199R |
| * | J | US-6,151,788 A | 11-2000 | Cox; Stacey | G01B11/27 | 33/286 |
| * | K | US-6,338,201 B1 | 01-2002 | Och; Rudolf | G01B7/14 | 33/501.11 |
| * | L | US-2002/0178598 A1 | 12-2002 | Berger, Heinz | G01B5/24 | 33/506 |
| * | M | US-2004/0200084 A1 | 10-2004 | Wang, Wen-Cheng | G01B3/50 | 33/501.45 |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

### *Notice of References Cited*

| | |
|---|---|
| Application/Control No. | Applicant(s)/Patent Under Reexamination |
| 14/502,503 | SLUDER, JOHN LANG |
| Examiner | Art Unit | Page 2 of 2 |
| G. Bradley Bennett | 2855 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2006/0248739 A1 | 11-2006 | Cauley; Dennis | F41A31/00 | 33/506 |
| * | B | US-2009/0320310 A1 | 12-2009 | Pelotte; Lawrence John | G01B3/28 | 33/836 |
| * | C | US-2010/0005676 A1 | 01-2010 | Fujikawa; Yuji | G01B5/12 | 33/542 |
| * | D | US-2013/0219728 A1 | 08-2013 | Hartman; Rodney P. | G01B3/205 | 33/506 |
| * | E | US-2014/0196300 A1 | 07-2014 | Williamson, IV; Warren P. | G01B3/28 | 33/701 |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

| 92269 | 7590 | 02/18/2016 |
|---|---|---|

Global Intellectual Property Agency, LLC
P.O. Box 382
Swedesboro, NJ 08085

| EXAMINER |
|---|
| BENNETT, GEORGE B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2855 | |

DATE MAILED: 02/18/2016

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/502,503 | 09/30/2014 | John Lang Sluder III | JS319875 | 3672 |

TITLE OF INVENTION: Ammunition Primer Pocket Gauge Tool

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | MICRO | $240 | $0 | $0 | $240 | 05/18/2016 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**



**EXHIBIT "C"**
**Page 21**

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail**    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax**   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

```
92269        7590        02/18/2016
```
**Global Intellectual Property Agency, LLC**
**P.O. Box 382**
**Swedesboro, NJ 08085**

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/502,503 | 09/30/2014 | John Lang Sluder III | JS319875 | 3672 |

TITLE OF INVENTION: Ammunition Primer Pocket Gauge Tool

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | MICRO | $240 | $0 | $0 | $240 | 05/18/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BENNETT, GEORGE B | 2855 | 033-506000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE        (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

## EXHIBIT "C"

Page 22



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/502,503 | 09/30/2014 | John Lang Sluder III | JS319875 | 3672 |

92269     7590     02/18/2016

Global Intellectual Property Agency, LLC
P.O. Box 382
Swedesboro, NJ 08085

| EXAMINER |
|---|
| BENNETT, GEORGE B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2855 | |

DATE MAILED: 02/18/2016

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

**EXHIBIT "C"**

**Page 23**

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| | Application No. | Applicant(s) |
|---|---|---|
| ***Notice of Allowability*** | 14/502,503 | SLUDER, JOHN LANG |
| | **Examiner** | **Art Unit** | **AIA (First Inventor to File) Status** |
| | G. Bradley Bennett | 2855 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *application filed 30 SEP 2014*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-15*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All   b) ☐ Some  *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
    Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☒ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date 30 SEP 2014
3. ☐ Examiner's Comment Regarding Requirement for Deposit
    of Biological Material
4. ☐ Interview Summary (PTO-413),
    Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

**EXHIBIT "C"**
**Page 25**

## REASONS FOR ALLOWANCE

1.      The following is an examiner's statement of reasons for allowance:  the independent

claims of the instant invention require an elongate member with a first end and a second end,

wherein the diameter of one end is equal to or slightly greater in diameter than a primer pocket,

in combination with further elements of a primer pocket gauge tool.  This combination is neither

disclosed nor suggested by the art of record.  Therefore, claims 1-15 are allowed.

Any comments considered necessary by applicant must be submitted no later than the

payment of the issue fee and, to avoid processing delays, should preferably accompany the issue

fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for

Allowance."

2.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

3.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to G. Bradley Bennett whose telephone number is 571.272.2237.

The examiner can normally be reached on M-TH 8:30-5:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Laura Martin can be reached on 571.272.2160.  The fax phone number for the

organization where this application or proceeding is assigned is 571.273.8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866.217.9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800.786.9199 (IN USA OR CANADA) or 571.272.1000.

/G. Bradley Bennett/

G. Bradley  Bennett
Primary Examiner
Art Unit 2855

gbb
3 FEB 2016


| SWFA | CMMG | | PK | MFT | DSG | DPMS | DEL-TON | | | MAGPUL |
|------|------|---|-----|-----|-----|------|---------|---|---|--------|
| LARUE | | SKD | VORTEX | BROWNELLS | RAINIER | AIM | STAG | RRA | VERIFORCE | JT |

UserName: [        ]    Password: [        ]  [ Log In ]  **Subscriptions**      » **0** Online

0. **Community List** » **Armory** » **New Products**                    » **Full Version**

**The Swage Gage primer pocket gage from Ballistic Tools, Inc**

**Gigs  [Industry Partner]**                                    8/9/2013 12:50:03 PM EDT

**Have you ever been unsure if you were fully removing the crimps from primer pockets when swaging or chamfering?**

**Have you wanted a way to detect out-of-spec loose or too shallow primer pockets quickly and easily?**



The Swage Gage primer pocket gage

Primers and primer pockets vary. Simply seating a primer doesn't always tell you the whole story. With this simple tool you can quickly and easily know for sure. As an extra benefit, you don't risk a primer detonation or a ruined primer cup if the pocket is bad.

I created the prototype for this tool because I needed a way to check the swage setting on my Dillon 1050 for complete crimp removal. I realized a "no-go" gage for pockets too loose to hold a primer would be useful as well, and the Swage Gage was born. I use this gage to frequently batch check the reprocessed brass I sell. Along with my Wilson case gauge, this has become an important tool that I use every day. It's one of those things that once you have it, you think "how did I ever get by without it?"

Currently for small pistol and small rifle primer pockets. One gage works for all small primer pockets, since they are specified the same. Large primer versions will be available at some point in the future.

So come get a Swage Gage primer pocket gage. It's a simple tool that's well worth it.

**Paid Advertisement**

**Partner Content** --

Copyright © 1996 - 2016 :: AR15.Com LLC :: All Rights Reserved.